# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISON

| | |
|---|---|
| STACEY BELLE, | ) CASE NO. 1:25-cv-01959-JJH |
| | ) |
| | ) JUDGE JEFFREY J. HELMICK |
| Plaintiff, | ) UNITED STATES DISTRICT JUDGE |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) REUBEN J. SHEPERD |
| WARDEN SHELBIE SMITH, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

## I.      Introduction

On September 8, 2025[1], Petitioner Stacey Belle ("Belle"), a prisoner in state custody, filed a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF Doc. 1). Respondent filed a Motion to Dismiss as time-barred with the state court record on December 19, 2025. (ECF Docs. 6, 6-1). On February 1, 2026, Belle filed a reply in opposition to Respondent's Motion to Dismiss. (ECF Doc. 8). Respondent filed a sur-reply on February 18, 2026. (ECF Doc. 9). Both the Motion and the Petition are ripe for review.

## II.     Factual Background

Ohio's Eighth District Court of Appeals summarized the facts of Belle's case as follows:

{¶2} In 2017, Belle was indicted in three separate cases. In Cuyahoga C.P. No. CR-17-614505-A, he was indicted for three counts of rape and one count of kidnapping involving B.W. The charges stemmed from an incident on July 4, 2012 (Case # 1).

---

[1] Federal district courts apply the prison mailbox rule, accepting filings as of the date placed in the prison mail system. *See Houston v. Lack*, 487 U.S. 266, 270 (1988).

In Cuyahoga C.P. No. CR-17-617407-A, Belle was indicted for one count of rape and one count of kidnapping involving C.E. The charges stemmed from an incident on May 21, 1997 (Case # 2). In Cuyahoga C.P. No. CR-17-621821-A, he was indicted for rape and kidnapping involving S.C. in an August 14, 1998 incident (Case # 3).

{¶3} Belle waived a jury trial. The three cases were tried to the bench in a joint trial. After trial, he was found not guilty in Case # 3, but guilty in Cases # 1 and # 2. He appealed separately from the trial court's judgment in the two cases (8th Dist. Cuyahoga Nos. 107300 and 107046, respectively). We consolidated the appeals for briefing, hearing, and disposition.

**Trial Testimony**

{¶4} At the bench trial, the state presented the following testimony:

**1.  Case # 1 (July 4, 2012 incident involving B.W.)**

{¶5} B.W., now 53, testified that she was addicted to crack cocaine. On July 4, 2012, she had four or five dollars with her and was looking to buy drugs. She came upon Belle, someone she had smoked crack with in the past. He offered to help her buy drugs. As they walked up the steps of an abandoned building, he pushed her down and raped her, without using a condom. She asked him to stop, but he told her to shut up. He also hit her face several times. Her earrings came off during the attack and a lipstick also fell out of her pocket. Afterward, he grabbed her money and left.

{¶6} B.W. did not remember exactly what happened after the incident, but she recalled being at the hospital for a rape kit to be collected. She also vaguely remembered going back to the scene of the incident with a police officer and found her earrings and lipstick. B.W. identified Belle in the courtroom as her assailant.

{¶7} A SANE nurse, Elizabeth Booth, testified regarding her treatment of B.W. and the administration of the rape kit. She testified extensively about the training she received to be a forensic nurse for victims of sexual assault, including the neurobiology of trauma and its effect on memory.

{¶8} A police officer who transported B.W.'s rape kit from the hospital to the police department also testified, as well as two DNA analysts, who testified about their analysis of B.W.'s rape kit.

{¶9} Although Belle was charged with three counts of rape (vaginal rape, fellatio, and cunnilingus) and one count of kidnapping, he was found guilty of one count of rape (vaginal rape) and one count of kidnapping, both with a sexually violent predator specification.

2

**2. Case # 2 (May 21, 1997 incident involving C.E.)**

{¶10} C.E., now 58, testified that she became addicted to crack cocaine after college and worked as a prostitute to support her drug addiction. On May 21, 1997, she got high and, looking for more money to buy drugs, was walking the street on the east side of Cleveland to find a man who would pay her in exchange for sex. A man appeared and told her to follow him. They climbed through a window, down to the basement of an abandoned apartment building across the street from John Adams High School. Once there, he used some crack cocaine and "went crazy," rushing toward her. She tried to fight him off. When she slipped, he fell on top of her, breaking her knee. She stopped fighting when he grabbed a pole or pipe because she became afraid he would hurt her with it. He raped her vaginally and forced fellatio on her. She defecated on herself during the attack. After he left, she climbed out of the window. While walking, she came across another man, who gave her crack cocaine in exchange for sex. The second man used a condom, however. C.E. then went to a hospital to treat her broken knee and had a rape kit collected. When a detective came to her parents' home to talk to her, she did not want to cooperate for fear that her parents would find out about her drug addiction and prostitution. In 2006, another detective contacted her and told her they had a DNA lead, but she signed a "no prosecution" form because she had asked God to help her forgive her assailant. Years later, a third detective contacted her and asked her to identify the assailant from a photo lineup but she was unable to identify the person that assaulted her.

{¶11} The nurse who treated C.E. at the hospital testified C.E. reported that her attacker forced fellatio on her and penetrated her vagina, and threatened to beat her with a pole. C.E. also mentioned she defecated on herself during the attack. C.E.'s medical record relating to the incident was submitted as an exhibit.

{¶12} The other witnesses in this case included the detective who took possession of the rape kit and transported it to the police station; the detective who went to C.E.'s residence to interview her in 1997; a forensic scientist who performed the DNA analysis of C.E.'s rape kit; and the detective who contacted C.E. in 2006.

{¶13} In Case # 2, Belle was charged with one count of rape and one count of kidnapping. After trial, he was found guilty of both counts, each with a sexually violent predator specification.

 (ECF Doc. 6-1, pp. 140-44; *see also State v. Belle* ("*Belle I*"), 2019 WL 1077871, at *1-2 (Ohio Ct. App., Mar. 7, 2019).

3

### III.    Procedural History

#### A.    State Conviction

##### i.    Case One: CR-17-614505

Belle was indicted on February 21, 2017 of the following offenses: three counts of rape, first-degree felonies, in violation of Ohio Revised Code ("O.R.C.") § 2907.02(A)(2) with sexually violent predator specifications pursuant to O.R.C. § 2941.148(A); and one count of kidnapping, a first-degree felony in violation of O.R.C. § 2905.01(A)(4) with a sexual motivation specification pursuant to O.R.C. § 2941.147(A) and a sexually violent predator specification pursuant to O.R.C. § 2941.148(A). (ECF Doc. 6-1, pp. 4-6). A warrant for his arrest was issued the same day. (*Id.* at p. 7). Belle pled not guilty on March 9, 2017. (*Id.* at p. 8).

##### ii.    Case Two: CR-17-617407

Belle was indicted on May 18, 2017 of the following offenses: rape, first-degree felonies, in violation of O.R.C. § 2907.02(A)(2) with a sexually violent predator specification pursuant to O.R.C. § 2941.148(A); and kidnapping, a first-degree felony in violation of O.R.C. § 2905.01(A)(4) with a sexual motivation specification pursuant to O.R.C. § 2941.147(A) and a sexually violent predator specification pursuant to O.R.C. § 2941.148(A). (*Id.* at pp. 13-14). Belle pled not guilty to the indictment on May 24, 2017. (*Id.* at p. 15).

##### iii.    Trial

On January 29, 2018, Belle waived his right to a jury trial. (*Id.* at pp. 9, 16). Following his bench trial, Belle was found guilty of one count of rape with the sexually violent predator specification and one count of kidnapping with sexual motivation and sexually violent predator specifications in connection with Case One and one count of rape and kidnapping in connection with Case Two with the associated specifications. (*Id.* at pp. 10, 17).

4

On March 12, 2018, Belle was sentenced to an aggregate prison term of 18 years to life. (*Id.* at pp. 11; 18). Specifically, in Case One, Belle was sentenced to nine years in prison for the rape conviction and nine years on the kidnapping conviction. (*Id.*). Those sentences were ordered to run concurrently to each other, but consecutively to the sentences in Case Two. (*Id.*). In Case Two, Belle was sentenced to nine years in prison for the rape conviction and nine years on the kidnapping conviction. (*Id.*). Those sentences were ordered to run concurrently to each other, but consecutively to the sentences in Case One. (*Id.*).

**B.      Direct Appeal**

Belle filed a notice of appeal to Ohio's Eighth District Court of Appeals on April 11, 2018. (*Id.* at p. 20).[2] In his appellate brief, Belle raised the following assignments of error:

Assignment of Error I:

THE LOWER COURT ERRED AND DENIED THE APPELLANT DUE PROCESS OF LAW IN CONSOLIDATING SEPARATE INDICTMENTS FOR SEPARATE EVENTS IN ABSENCE OF A MOTION TO JOIN OR ANY FINDINGS PURSUANT TO CRIM. R. 13.

Assignment of Error II:

THE VERDICTS BELOW WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Assignment of Error III:

THE VERDICTS FINDING THE APPELLANT GUILTY OF THE SEXUALLY VIOLENT PREDATOR SPECIFICATIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS OF LAW.

---

[2] Belle filed a notice of appeal of his convictions and sentence in Case One (ECF Doc. 6-1, p. 20) and a Motion for Leave to File Delayed Appeal of his convictions and sentence in Case Two at a later date (*Id.* at pp. 29-31) after his attorney realized he had been appointed for both. The appellate court granted the motion, and consolidated the appeals for briefing and disposition. (*Id.* at p. 42).

Assignment of Error IV:

THE APPELLANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL WHEN THE COURT PERMITTED EXPERT PSYCHOLOGICAL TESTIMONY FROM A NURSE WITHOUT QUALIFICATION AS AN EXPERT IN THAT AREA AND WITHOUT EXPERT REPORT AS REQUIRED BY OHIO CRI. R. 16.

Assignment of Error V:

THE APPEL[L]ANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

(*Id.* at pp. 45-67). The state of Ohio filed its brief in opposition on October 10, 2018. (*Id.* at pp. 73-106).

On March 7, 2019, the appellate court affirmed Belle's convictions but remanded the case to the trial court to clarify Belle's sentence via nunc pro tunc entry because at his sentencing hearing "the trial court imposed a life tail to his sentence in each case" however "the sentencing entry did not clearly reflect that the life tail was imposed for Belle's convictions . . . ." (*Id.* at pp. 107-31; *see also Belle I*, 2019 WL 1077871, (Ohio Ct. App., Mar. 7, 2019)).

Belle filed a notice of appeal and a motion for delayed appeal with the Ohio Supreme Court on June 20, 2019. (*Id.* at pp. 132-62).[3] The Ohio Supreme Court granted the motion on August 20, 2019, and ordered that Belle file his memorandum in support of jurisdiction by September 18, 2019. (*Id* at p. 163). On September 25, 2019, the Ohio Supreme Court dismissed Belle's appeal for failure to prosecute his case with the

---

[3] I note that the cover page of the notice appeal has file stamps for April 23, 2019, May 14, 2019, and June 20, 2019. (*See* ECF Doc. 6-1, p. 132). However, a review of the Ohio Supreme Court's docket reveals that the court considered the appeal filed on June 20, 2019. *See* Supreme Court of Ohio, Docket Search for Case Information 2019-0845: *State of Ohio v. Stacey Belle*, https://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2019/0845 (last visited June 17, 2026).

requisite diligence after he failed to file his memorandum in support of jurisdiction. (*Id.* at p. 164; *see also State v, Belle* ("*Belle II*"), 131 N.E.3d 940 (Table), (Sept. 25, 2019)).

### C.        Post Conviction Proceedings

On May 1, 2019, the trial court issued a nunc pro tunc entry following the remand from the Eighth District Court of Appeals correcting the sentence to add: "a life tail is imposed to the defendant's sentence in each case for the sexually violent predator specifications . . . thus sentencing defendant to an aggregate sentence of 18 years to life." (*Id.* at pp. 165-68).

Belle filed a petition to vacate or set aside judgment of conviction or sentence on May 17, 2019. (*Id.* at pp. 169-91). On August 5, 2019, Belle filed a motion for leave to supplement his post-conviction petition. (*Id.* at pp. 192-209). Belle filed a motion to supplement exhibits for post-conviction petition on December 16, 2019. (*Id.* at pp. 210-19). The state of Ohio filed its brief in opposition on March 16, 2020. (*Id.* at pp. 220-39). Belle filed a reply brief on March 30, 2020. (*Id.* at pp. 240-47). On October 14, 2020, Belle filed a motion for "clarity in regards to motion for leave to supplement post-conviction relief." (*Id.* at pp. 248-49). The trial court denied Belle's petition for post-conviction relief on February 14, 2023. (*Id.* at pp. 250-56).

Belle appealed the denial of his petition for post-conviction relief on March 14, 2023. (*Id.* at pp. 257-70). Belle's appeal was dismissed for failure to file an appellate brief on May 19, 2023. (*Id.* at p. 271).

### IV.    Federal Habeas Corpus Petition

Belle brings five grounds for relief for this Court's review:

GROUND ONE:
Belle was deprived the effective assistance of trial counsel. He was denied counsel in the post-conviction proceeding when it was the initial-review collateral proceeding, and he therefore has "cause" for his procedural defaults.

GROUND TWO:
The trial testimony and prior statements of [C.E.] and [B.W.] Are insufficient to prove rape and kidnapping beyond a reasonable doubt. The Trial judge errored and was unreasonable in finding their trial testimony and Prior statements as credible when each of them gave three completely different Accounts of what happened. Belle's trial attorney failed to raise issue that their trial testimony and prior statements show three completely different accounts of what happened.

GROUND THREE:
The trial judge found that Belle is a sexually violent predator when the trial testimony and prior statements of [C.E.] and [B.W.] are not credible. Belle's trial attorney failed to argue against the sexually violent predator specification, and failed to offer any mitigating circumstances. Belle's due process rights were violated when the judge sentenced him to life in prison based on a sexually violent predator specification. The trial testimony and prior statements of [C.E.] and [B.W.] are insufficient to sustain that finding because each of them gave three completely different accounts of what happened during the alleged rapes.

GROUND FOUR:
Belle contends that his right to due process and a fair trial were violated when the trial judge accepted detailed psychological and biological testimony from a non-expert witness in an effort to account for [C.E.] and [B.W.'s] three different accounts of what happened, and their lack of memory and recall of the incidents. Trial Counsel was ineffective because he failed to object to the non-expert testimony.

GROUND FIVE:
Belle was not able to argue his case on the DNA evidence on direct appeal because the trial judge refused to allow him to obtain the documents that support his arguments on the DNA evidence; and because his appellate attorney did not order the documents on the DNA evidence during the appellate proceedings.

(ECF Doc. 1, pp. 2-3).

## V.     Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104-132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to Belle's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This is so because "[s]tate courts are adequate forums for the vindication of federal rights" and

AEDPA thus acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). As such, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181, quoting 28 U.S.C. §§ 2254(a), (b), (c). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application

> shall not be granted . . . unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181.

First, clearly established federal law for purposes of AEDPA review includes "the holdings, as opposed to dicta, of [U.S. Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to U.S. Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court despite both cases having materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). However, a state court does not act contrary to clearly established federal law where U.S. Supreme Court precedent is ambiguous or otherwise unavailable. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is an unreasonable application of Supreme Court precedent where the state court's adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; see also *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). Under § 2254(d)(2), a state court's factual determination will stand unless it is objectively unreasonable in light of the evidence presented in state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

Next, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). And, as the U.S. Supreme Court has repeated, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion . . . ." *Burt*, 571 U.S. at 18. Federal courts must also defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

In all, federal habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems," and is different in kind from the relief available in direct appeal.

*Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (internal quotation omitted). Thus, to obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) ("When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

## VI.     Procedural Barriers to Federal Habeas Corpus Review

Before coming to federal court, a state habeas petitioner must overcome certain procedural barriers, including exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). A federal court sitting in habeas review may review claims that were evaluated on the merits by the state court. But claims that were not evaluated by a state court, either because they were never fully presented to the state court (*i.e.*, state court remedies were unexhausted) or because they were not properly presented to the state court (*i.e.*, they are procedurally defaulted) are not available for federal habeas corpus review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007).

### A.     Exhaustion

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have

been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate the same facts; the state court must have been called upon to apply the legal principles of the claim now presented to the federal courts. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

The petitioner also must have presented their "claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Williams*, 460 F.3d at 807 (quotation marks omitted). In this Circuit, this can be done in one of four ways:

(1) reliance upon federal cases employing constitutional analysis;

(2) reliance upon state cases employing federal constitutional analysis;

(3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

(4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (paragraph breaks added).

Failure to exhaust occurs where state court remedies are still "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). This failure to exhaust can also lead to a petitioner procedurally defaulting his claims. If the petitioner has not fully utilized his state remedies and has no legal mechanism by which to do so now, the claim he failed to present is procedurally defaulted, and this Court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).

### B. Procedural Default

The procedural default doctrine limits federal review if the petitioner has failed to follow the state's procedural requirements for presenting his or her claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, a federal habeas court will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgement.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quotation marks omitted).

This Circuit consults a four-part test to determine whether a petitioner has procedurally defaulted a claim. A petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Because the procedural-default bar to federal habeas review is harsh, courts have created safety-valves to permit review in limited circumstances. A petitioner can obtain review of procedurally defaulted claims if he or she shows: (1) "cause," *i.e.* that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.* that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation hadn't occurred. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wogenstahl v. Mitchell*, 668 F.3d 307, 337

13

(6th Cir. 2012). A petitioner can also obtain review of a procedurally defaulted claim if the procedurally defaulted claim is based on new evidence that the petitioner was factually innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To overcome procedural default, an actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## VII. Discussion

Respondent filed a Motion to Dismiss, arguing that Belle's Petition was untimely filed pursuant to 28 U.S.C. § 2244(d)(1)(A). (ECF Doc. 6). Belle contends that Respondent's allegation that his petition is untimely is unfounded. (ECF Doc. 8). He argues that 28 U.S.C. § 2244(d)(1)(B) applies to his petition, and under that provision that it is timely filed. (*Id.*). For the reasons set forth below, I find that 28 U.S.C. § 2244(d)(1)(A) applies to Belle's Petition and that it was filed after AEDPA's one-year statute of limitations.

### A. Belle's Petition is untimely under § 2244(d)(1)(A).

AEDPA provides that a: "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The statute of limitations period runs from the latest of four possible dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

14

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). The United States Supreme Court has held that "direct review" for purposes of § 2241(d)(1)(A) includes seeking certiorari. *Penry v. Lynaugh*, 492 U.S. 302, 314 (1989). Therefore, the statute of limitations includes the 90 days that the petitioner has to seek certiorari whether or not such review is sought. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459-60 (6th Cir. 2012), citing *Gonzalez v. Thaler*, 56 U.S. 134 (2012).

At the outset, I address Belle's argument that 28 U.S.C. § 2244(d)(1)(B) applies to his Petition. "Belle contends that the 1-year AEDPA limitation did not commence until he found that Martinez, Trevino, and White[4] gave him a 'narrow exception' to file an ineffective trial counsel claim in his federal habeas petition, because the application created by State law which impeded a timely filing of his federal petition was never removed. These state laws and statutes still exist in Ohio." (ECF Doc. 8, pp. 3-4) (emphasis omitted). Belle asserts that he did not realize this "narrow exception" until June 2025, and under 28 U.S.C. § 2244(d)(1)(A), that is when the one-year limitations period began to run. (*Id.* at p. 5). Belle's contention appears to be that he did not realize until June 2025 that he could argue an ineffective assistance of counsel claim in his federal habeas petition that is different than the one raised on direct appeal. (*Id.* at p. 4 ("Belle's direct appeal attorney raised an ineffective assistance of counsel claim, but failed to raise the substantial claims that Belle raised in his federal habeas petition."). Belle further contends that he

---

[4] Belle frequently refers to "Martinez, Trevino, and White" in his Traverse. (*See* ECF Doc. 8, pp. 4, 8). Belle later provides a full citation for "Martinez" as *Martinez v. Ryan*, 566 U.S. 1 (*Id.* at p. 7) and "Trevino" as *Trevino v. Thaler*, 569 U.S. 413 (*Id.* at p. 8). He does not provide a citation to "White."

15

was confused about what to do. When the Ohio Supreme Court dismissed his direct appeal on September 25, 2019 for want of prosecution; and when the Court of Appeals dismissed his post-conviction appeal on May 19, 2023 for failure to file a brief in support, Belle did not know what to do. He did not know whether his direct appeal process was over, and he did not know whether his post-conviction process was over. He thought he had to finish exhausting his claims in state court before he could file anything in federal court.

(*Id.* at p. 6). Finally, Belle also claims that his "failure to file a timely habeas petition was also due to his dyslexia." (*Id.* at p. 7).

In the sur-reply, Respondent contends that Belle's application of 28 U.S.C. § 2244(d)(1)(B) is improper here. (ECF Doc. 9). According to Respondent, "[t]here was no State-created impediment that prevented Belle from timely filing his habeas petition, and he certainly could have discovered existing case law in any of the years that he was appealing his case with due diligence. (ECF Doc. 8, p. 3).

Upon review, the cases Belle relies on that he claims gave him a "narrow exception" to file his habeas petition do not stand for the proposition that his petition is timely filed under 28 U.S.C. § 2244(d)(1)(B). Rather, both *Martinez* and *Trevino* discuss an ineffectiveness of counsel claim and its relation to cause and prejudice to excuse procedural default. *See Martinez v. Ryan*, 566 U.S. 1; *Trevino v. Thaler*, 569 U.S. 413. Further, Belle's arguments related to when he learned he could file a federal habeas petition or his confusion regarding the state of his case in state court are similarly unavailing. These arguments do not address an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States" being removed. 28 U.S.C. § 2244(d)(1)(B). Therefore, I find that provision inapplicable and turn to whether Belle's Petition was timely pursuant to 28 U.S.C. § 2244(d)(1)(A).

Under section 2244(d)(1)(A), Belle had one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such

16

review" to file his petition. Here, Belle's conviction and sentence were affirmed by Ohio's Eighth District Court of Appeals on March 7, 2019. (ECF Doc. 6-1, pp. 107-31; *Belle I,* 2019 WL 1077871). He then had 45 days to file an appeal to the Ohio Supreme Court. *See* S.Ct.Prac.R. 7.01(A)(1). Belle filed a Motion for Delayed Appeal to the Ohio Supreme Court which was granted on August 20, 2019. (ECF Doc. 6-1, p. 163). The Ohio Supreme Court dismissed the appeal on September 25, 2019 after Belled failed to file a memorandum in support of jurisdiction. (*Id.* at p. 164; *Belle II*, 131 N.E.3d 940). There is no indication that Belle sought certiorari with the United States Supreme Court, but for purposes of AEDPA's one-year statute of limitations, he still receives the benefit of his conviction becoming final after the time to seek certiorari expires – i.e., 90 days. *Keeling*, 673 F.3d at 459-60 Thus, Belle's conviction became final on December 24, 2019.

Belle's petition was filed with this Court on September 8, 2025. (ECF Doc. 1). Thus, absent statutory or equitable tolling, Belle's petition is time-barred.

**B.      Belle's Petition is untimely after statutory tolling.**

AEDPA allows for statutory tolling under § 2244(d)(2) when it states: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2); *see also Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016). Statutory tolling extends "until the application has achieved final resolution through the State's post-conviction procedures," *Carey v. Saffold*, 536 U.S. 214, 220 (2002), or "until the expiration of the period for further State court review, whether or not the petitioner actually seeks such review." *Holbrook*, 833 F.3d at 615, quoting *Whitcomb v. Smith*, 23 F. App'x 271, 273 (6th Cir. 2001). However, even where a petitioner has properly filed a state

17

postconviction motion and tolls AEDPA's statute of limitations, statutory tolling under 28 U.S.C. § 2244(d)(2) does not serve to revive the one-year limitations period. *Vroman v. Brigano*, 346 F.3d 589, 601 (6th Cir. 2003). Rather, statutory tolling only pauses a clock that has not yet expired. *Id.* And the statute of limitations is not tolled during the filing of a subsequent petition for certiorari to the United States Supreme Court because that period is within the federal system and is "not a part of a 'State's post-conviction procedures.'" *Lawrence v. Florida*, 549 U.S. 327, 337 (2007) (quoting 28 U.S.C. § 2244(d)(2)).

Here, the statute of limitations tolled until July 3, 2023, when Belle's post-conviction relief petition achieved final resolution.

Belle filed his petition for post-conviction relief with the state trial court on May 17, 2019, before his conviction became final. (ECF Doc. 6-1, pp.169-91). The state trial court denied the petition on February 14, 2023, and Belle appealed that decision to the state appellate court, but the appeal was dismissed on May 19, 2023 after Belle failed to file an appellate brief. (*Id.* at p. 271). No further action was taken. Belle then had 45 days to file an appeal with the Ohio Supreme Court. *See* S.Ct.Prac.R. 7.01(A)(1). However, while Belle did not appeal the appellate court's decision, the statute of limitations tolls for the 45 days he had to file such an appeal. *See Holbrook*, 833 F.3d at 615. Therefore, pursuant to § 2244(d)(2), the statute of limitations tolled and did not begin to run until July 3, 2023. Therefore, accounting for AEDPA's one-year statute of limitations, Belle had until July 3, 2024 to file his Petition, and because he filed on September 8, 2025, his petition was untimely.

### C.     Equitable tolling does not save Belle's Petition.

AEDPA's one-year statute of limitations does not present a jurisdictional bar; an untimely petition may yet receive equitable tolling. *Borns v. Chrisman*, 167 F.4th 335, 343 (6th Cir. 2026);

18

*see also Holland v. Fla.*, 560 U.S. 631, 649 (2010). "'[A] petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

However, equitable tolling is applied "sparingly." *Borns*, 167 F.4th at 346 (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). It is available only in the extraordinary circumstance – a "garden variety claim of excusable neglect" leading to "a simple miscalculation" of the filing deadline will not equitably toll an untimely petition. *Holland*, 560 U.S. at 651-52. This is particularly so where the delayed petition is months late. *Borns*, 167 F.4th at 346 (denying equitable tolling after a 364-day delay in the state postconviction filing caused the federal habeas petition to be untimely); *see also, e.g.*, *Greene v. Lafler*, 457 F. App'x 485, 487 (6th Cir. 2012) (denying equitable tolling after a five-month delay in filing the federal habeas petition).

Here, many of Belle's arguments in his response the Motion to Dismiss appear to be arguments in favor of equitable tolling. Belle claims that he was unaware of federal case law that discusses excusing procedural default for ineffective assistance of counsel claims. (*See* ECF Doc. 8, pp. 4-5, 8-9, (discussing *Martinez*, 566 U.S. 1 and *Trevino*, 569 U.S. 413)). He also asserts that his petition should be considered timely because he was confused and because of his dyslexia. (*Id.* at pp. 5-7). He also claims that he had requested the assistance of other inmates for guidance on his federal habeas petition, but did not receive answers until October 2024. (*Id.* at p. 12). However, these arguments do not entitle him to equitable tolling. *Holland*, 560 U.S. at 651-52. Rather, the record reveals that Belle failed to diligently pursue his rights in appeal to the Ohio Supreme Court when his case was dismissed for failure to file a memorandum in support of

19

jurisdiction (ECF Doc. 6-1, p. 164; *Belle II*, 131 N.E.3d 940) and in his appeal of the denial of his post-conviction relief petition when his appeal was dismissed for failure to file an appellate brief (*id.* at p. 271). Because Belle has not established that he was diligent in pursuing his rights nor that there was impediment out of his control that prevented him from timely filing, I find that he is not entitled to equitable tolling.

Accordingly, I recommend that the District Court find that Belle's petition was untimely filed under AEDPA and grant Respondent's Motion to Dismiss.

## VIII.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a §2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

If the District Court accepts my recommendation, Belle will not be able to show that reasonable jurists could disagree with the District Court's grant of the Motion to Dismiss. Belle's petition is over a year late with the benefit if statutory tolling, and Belle has not demonstrated

20

that he diligently pursued his rights in state court or that there was something outside of his control that prevented him from filing his petition timely. For these reasons I recommend that no certificate of appealability issue in this case.

## IX.    Recommendation

For the foregoing reasons, I recommend that the Respondent's Motion to Dismiss be granted and that Belle's Petition for a writ of habeas corpus be dismiss as untimely. I further recommend he be denied a certificate of appealability.

Dated: June 25, 2026

REUBEN J. SHEPERD
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, \*2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections

21

may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).